# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL SMITH

        Plaintiff

v.

TYLER MEMORIAL HOSPITAL
DENISE GIESKI

        Defendants

3:11-CV-01426
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Jill Smith filed a three-count Complaint against Defendants Tyler Memorial Hospital ("Hospital") and Denise Gieski ("Gieski") for alleged violations of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress on August 3, 2011. (Doc. 1). Before the Court is Defendant's Motion to Dismiss Counts II and III of the Complaint ("Compl.") for failure to state a claim upon which relief may be granted. (Doc. 5). For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss Counts II and III.

### II. Plaintiff's Allegations

Plaintiff was employed by the Defendant Hospital for approximately ten years as the Director of Human Resources, without any negative reports or actions. (Compl. at ¶¶ 13-15). At all times relevant to this action, Defendant Gieski was the President and CEO of

Defendant Hospital, as well as Plaintiff's direct supervisor. (Id. at ¶¶ 8, 18). Plaintiff claims that Defendant Denise Gieski was "abrasive, hostile, and threatening" toward Plaintiff on a number of occasions between April 2008 and July 2009 (Id. at ¶¶ 17-19). In response to Defendant Gieski's abrasive, hostile, and threatening treatment, Plaintiff submitted a complaint to her employer against Gieski in April 2008. (Id. at ¶ 17). On July 6, 2009, during a meeting at work between Plaintiff and Defendant Gieski, the latter was "verbally abrasive, hostile, and threatening" toward Plaintiff. (Id. at ¶ 19). As a result of this alleged treatment, Plaintiff alleges she "suffered an emotional or mental breakdown" on July 6, 2009. (Id. at ¶ 20). On July 7, 2009, Plaintiff called off work to visit her primary care physician to begin a course of treatment for anxiety and depression. (Id. at ¶¶ 21, 22). That same day, she was approved for and started leave under the FMLA due to her anxiety and depression, and at some point, she also obtained an employee advocate. (Id. at ¶¶ 23, 25).

On July 21, 2009, during a meeting with Plaintiff and her advocate, Defendant Gieski demanded to speak with Plaintiff's counselor, who was treating her for depression and anxiety. (Id. at ¶ 24). A few days later while Plaintiff was still on leave, Defendant Gieski allegedly contacted Plaintiff in a "hostile and threatening" manner and demanded a meeting with Plaintiff before she returned from her leave. (Id. at ¶ 27). Such a meeting was scheduled by Defendant Gieski and Plaintiff's advocate for August 4, 2009, and Defendant Gieski, Plaintiff, and Plaintiff's advocate were all present at the meeting. (Id. at ¶ 32). Though Plaintiff's physician had written a return-to-work note indicating a return date of

August 3, 2009, the note was placed on hold until after "consultation and corroboration with Plaintiff's counselor." (*Id.* at ¶¶ 26, 37). Plaintiff alleges that Gieski demanded this note at the August 4th meeting and when Plaintiff stated she did not have it with her, Defendant Gieski terminated Plaintiff immediately. (*Id.* at ¶¶ 33-35). Plaintiff states that she was not given an explanation for her termination, but Defendant Gieski mentioned that she was aware of Plaintiff's prior complaint concerning harassment by Gieski in April 2008. (*Id.* at ¶ 35).

In response to Defendant Gieski's demand for the return-to-work note, Plaintiff's physician's staff, without the physician's authorization, faxed the note to Defendant Gieski. The note stated Plaintiff's date of return to work as August 3, 2009. (*Id.* at ¶ 37). Plaintiff claims that she was terminated because she did not produce the note upon Defendant Gieski's demand, and Defendants prevented her from receiving the benefits available to her through the FMLA. (*Id.* at ¶ 39).

Thereafter, Plaintiff filed a Complaint containing three Counts for (I) violations of the FMLA, (II) Intentional Infliction of Emotional Distress, and (III) Negligent Infliction of Emotional Distress. Defendants moved to dismiss Counts II and III for failure to state a claim upon which relief could be granted. (Doc. 5). Defendants also contend that such claims are barred by the Pennsylvania Workers' Compensation Act, 77 PA CONS. STAT. ANN. § 1 *et seq.* ("WCA").

The Court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331 and 1367. Venue is proper in the Middle District of Pennsylvania under 28 U.S. C. § 1391(b).

### III. Standard of Review on Motions to Dismiss

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. Thus, a complaint must "show" an entitlement for relief with facts. A mere allegation that a plaintiff is

entitled to relief is insufficient to withstand a motion to dismiss. See *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. At 1949. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler*, 578 F.3d at 210-11.

## IV. Analysis

### A. Motion to Dismiss Claim of Intentional Emotional Distress

For Plaintiff to prevail on a claim for intentional infliction of emotional distress, she must show that Defendants acted with "intentional outrageous or extreme conduct" which caused her severe emotional distress. *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). "Outrageous or extreme conduct has been defined by the appellate courts of this Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Id.* (internal quotation marks omitted). "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Id.* at 1231.

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have . . . presented only the most egregious

5

> conduct. *See[,] e.g., Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). Furthermore, a plaintiff must demonstrate physical injury or harm to sustain a cause of action for intentional infliction of emotional distress. *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) ("Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. . . . [A]t the very least, existence of the alleged emotional distress must be supported by competent medical evidence.")); *Crivellaro v. Pennsylvania Power and Light Co.*, 491 A.2d 207 (Pa. Super. Ct. 1985) (finding that symptoms of depression, nightmares, anxiety requiring psychological treatment, and . . . ongoing mental, physical and emotional harm sufficiently stated physical manifestations of emotional suffering to sustain a cause of action).

Plaintiff claims that she "suffered an emotional or mental breakdown" as a result of Gieski's treatment. (Compl., ¶ 20). She also has visited a counselor and physician who treated her for symptoms of those injuries. (*Id.* at ¶ 21-25). Plaintiff

has sufficiently stated facts showing she has suffered injuries which are alleged to be supported by competent medical evidence.

However, while she has shown that she has experienced such injuries, her Complaint alleges in a conclusory manner events in which Defendant Gieski was "abrasive, hostile, and threatening" toward her. (*Id.* at ¶¶ 17, 19). There are no details alleged showing *how* Gieski was abrasive, hostile, or threatening. Plaintiff's Complaint is utterly devoid of any showing that Defendant Gieski's behavior could be considered so "outrageous or extreme" as to fall outside the bounds of decency, especially in light of the limited cases, *supra*, in which courts have recognized such a cause of action. Even accepting all of the facts alleged as true, the Complaint does not allege "enough facts to state a claim to relief that is plausible on its face" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Thus, the Court will grant Defendants' Motion to Dismiss on this Count.

### B. Negligent Infliction of Emotional Distress

A plaintiff asserting a claim for negligent infliction of emotional distress in Pennsylvania must establish at least one of the following four elements as a threshold matter: (1) that the defendant had a contractual or fiduciary duty toward her, (2) that plaintiff suffered a physical impact, (3) that plaintiff was in a "zone of danger" and at risk of an immediate physical injury, or (4) that plaintiff had a contemporaneous perception of tortious

injury to a close relative. *Doe v. Phila. Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000). In addition, "[i]n all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate* and *substantial* physical harm." *Id.* (emphasis in original).

The Complaint does not put forth any information that would meet any one of these four elements. Though Plaintiff contends in her Brief in Opposition to Motion to Dismiss that Defendants owed her a fiduciary duty to ensure that she received all FMLA benefits to which she was entitled (Doc. 7, at 9), Plaintiff neither has alleged such a duty in her Complaint nor cited to any case law in her brief that such a duty even exists. The Court is unaware of any authority for the proposition that employers owe their employees a fiduciary, as opposed to a statutory, duty to ensure that the employees receive FMLA benefits. Therefore, for the same reasons the Court dismisses Count II stated above, the Court also dismisses Count III.

### C. Workers' Compensation Act

Though the Court will dismiss Counts II and III, it will also address Defendants' contention that Plaintiff's tort claims are barred by the WCA. The purpose of the WCA is to provide the "sole and exclusive means of recovery for all injuries. . . . [T]he Act . . . expressly bars common law actions 'for any injury or death occurring in the course of employment.'" *Hartwell v. Allied Chem. Corp.*, 320 F. Supp. 75, 77 (W.D. Pa. 1970). "The exclusivity provision of [the WCA] bars claims for intentional and/or negligent infliction of emotional

distress arising out of an employment relationship." *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (citing 77 PA. CONS. STAT. ANN. § 481(a)) (internal quotation marks omitted).

While tort claims are generally barred, there is "a narrow personal animus exception where the alleged injury was motivated by personal reasons as opposed to generalized contempt or hatred and did not arise in the course of employment." *Ahmed v. Lowe's Home Ctrs.*, 346 F. App'x 816, 821 (3d Cir. 2009) (citing 77 PA. CONS. STAT. § 411).[1] "In order for an employee to set forth a valid cause of action against his employer under the personal animus exception, 'an employee must assert that his injuries are not work-related because he was injured by a co-worker for purely personal reasons.'" *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa. Super. Ct. 2000).

Plaintiff claims, without showing how, that on a number of occasions, Defendant Gieski was verbally threatening, abrasive, and hostile toward Plaintiff between April 2008 and July 2009 . (*Id.* at ¶¶ 17-19). This behavior led Plaintiff to submit a complaint for harassment with her employer. (*Id.* at ¶ 17). At the August 4 meeting, Defendant Gieski demanded the return-to-work note from Plaintiff's treating physician. When Plaintiff informed Gieski she did not have it with her, Gieski terminated Plaintiff without "further

---

[1] § 411(1) states:

The term "injury arising in the course of his employment" . . . shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to [her], and not directed against [her] as an employee or because of [her] employment; . . . but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer. . . .

9

discussion or explanation." (*Id.* at ¶ 35). Plaintiff claims that Gieski mentioned that she was aware of Plaintiff's prior complaint regarding harassment. (*Id.*). This lone statement is the sole basis by which Plaintiff asks the Court to determine there was some personal animus directed by Defendant Gieski against Plaintiff.

However, Plaintiff has not alleged any facts to show how Defendant Gieski's actions arose outside of the employment context or were motivated by "purely personal reasons." *Abbott*, 758 A.2d at 1224. Therefore, the Court will grant Defendants' Motion to Dismiss Counts II and III on the additional basis that these claims are barred by the WCA.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Counts II and III of the Complaint. (Doc. 5). The sole remaining claim in this case is Plaintiff's FMLA claim under Count I. A separate Order follows.

Robert D. Mariani
United States District Judge